GEORGE A. RATNER & others[1] vs. CANADIAN UNIVERSAL
INSURANCE COMPANY, LTD.
(and a companion case[2]).

Middlesex. March 4, 1971. — April 22, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, REARDON, & BRAUCHER, JJ.

*Insurance*, Action against insurer, General liability insurance, Disclaimer
of liability, Insured, Coverage, Notice. *Practice, Civil*, Premature
action. *Evidence*, Presumptions and burden of proof, Offer of proof.
*Law or Fact. Notice.*

A disclaimer by the insurer under a comprehensive liability policy of a
duty to defend a tort action brought against the insured shortly before
the disclaimer precluded the insurer from defending a contract action
for breach of such duty, commenced against it by the insured after a
verdict against the insured in the tort action but before exceptions
therein were overruled and judgment for the plaintiff therein entered,
on the ground of a violation by the insured of the policy provision
that "No action shall lie against the . . . [insurer] . . . until the amount
of the insured's obligation to pay shall have been finally determined . . .
by judgment against the insured after actual trial." [378–379]
At the trial of a contract action by the insured against the insurer under a
liability policy providing that the insurance "applies only to [liability
for] bodily injury . . . arising out of the insured's business . . . pursuit,"
for failure to defend a tort action against the insured by one bitten by
a dog, evidence that the insured was engaged in the junk automobile
business on premises which it shared with a corporation, that as part
of "security measures" with respect to the premises dogs were obtained
which were licensed to the insured and taken care of by the corporation,
and that the plaintiff in the tort action was an employee of the cor-
poration and was bitten on the premises warranted a conclusion that
his injuries arose out of the insured's "business . . . pursuit." [379]
In a comprehensive liability insurance policy designating both a corpora-
tion and a partnership as the "Named Insured" and providing in a
"Severability of Interests" clause that the "term 'the insured' is
used severally and not collectively," a further provision that "this
policy does not apply . . . to bodily injury to . . . any employee of the

---

[1] George A. Ratner, William A. Ratner and Eugene L. Ratner, individually
and as they are partners doing business as Weg Auto Company.

[2] George A. Ratner & others *vs.* Harold H. Sisson & Co., Inc.

insured" did not exclude coverage of an action for bodily injury by an employee of one named insured against the other named insured. [380–381]

At the trial of an action by the insured against the insurer under a comprehensive liability policy for breach of the insurer's duty under "Coverage B" below a bold type caption "Insuring Agreements," to pay a sum which the insured had become legally obligated to pay because of a bodily injury, where it appeared that under a separate bold type caption "Exclusions" liability for bodily injury to any employee of the insured was excluded from the coverage, the burden was on the insurer to prove that the injured person was an employee of the insured, not on the insured to show that the injured person was not its employee, notwithstanding an introductory clause preceding the "Insuring Agreements" that the insurer "Agrees with the insured . . . subject to the . . . exclusions . . . of this policy." [381]

A legend in red type at the top of the first page of a comprehensive liability insurance policy, reading "In the event of any occurrence likely to result in a claim under this document, immediate notice should be given" to the insurer, was part of the policy, and when read with a condition on the last page of the policy requiring written notice of an accident "as soon as practicable," written notice of an accident which was likely to result in a claim under the policy was required as soon as practicable. [381–383]

At the trial of an action by the insured against the insurer under a policy covering liability for bodily injury caused by any accident which was "likely" to result in a claim under the policy, provided written notice of the accident was given "as soon as practicable," a finding by the jury that a written notice of an accident sent by the insured nearly a year after its occurrence was timely and sufficient would have been warranted where there was evidence that an elderly employee of a corporation which shared the business premises of the insured was bitten there by a dog kept there "for security reasons," that the employee had had heart attacks, that after the dog bite he declined a visit to the hospital and said he did not think his injury was serious and that he would go home and see his own doctor, that he received workmen's compensation under a policy of the corporation, that shortly before his death about two months after the dog bite he said he was coming back to work, and that following a few weeks after his death the insured heard nothing concerning the employee or the accident until shortly before the notice was sent. [383–384]

At the trial of an action by insured partners against the insurer under a policy covering liability for bodily injury caused by any accident which was "likely" to result in a claim under the policy, provided written notice of the accident was given "as soon as practicable," it was error for the judge to rule that as matter of law a written notice sent by the insureds nearly a year after an employee of a corporation, which shared the business premises of the insureds, was bitten there by a dog kept there "for security reasons" was sufficient notice, where there was evidence that the insureds knew of the dog bite the day it happened

and three days later notified their insurance agent of the accident in a letter stating that "since the incident did occur in our yard [used] in common [with the corporation], we are herewith advising you so that our rights may be protected should the occasion arise". [384]

At the joint trial of a contract action by the insured against the insurer under a liability policy for failure to defend a tort action for personal injury brought against the insured, and a contract and tort action brought by the insured against its insurance agent for failure to forward notice of the accident to the insurer, where it appeared that the judge erroneously ruled as matter of law that a written notice of the accident sent by the insured nearly a year after its occurrence was a sufficient notice under the policy, further ruled that "there should be no further evidence concerning notice," and ordered a verdict for the insurance agent, that the insured duly excepted to such rulings and order in the case against the insurance agent and stated that but for the second ruling it would have offered further evidence on notice, and that the agent disputed receipt by it of notice of the accident, it was held that the insured's exceptions must be sustained. [384–385]

ACTION OF CONTRACT and ACTION OF CONTRACT AND TORT. Writs in the Superior Court dated June 21, 1965, and April 22, 1965.

The actions were tried together before *Mitchell*, J.

*Louis K. Nathanson* for Canadian Universal Insurance Company, Ltd.

*Joseph T. Fahy (Francis J. Lawler & Richard L. Morningstar* with him) for the plaintiffs.

*Lionel H. Perlo (Jacob J. Locke* with him) for Harold H. Sisson & Co., Inc.

BRAUCHER, J. The plaintiffs (Weg) brought an action on a comprehensive liability insurance policy issued by the defendant [3] (Canadian) for damages, including counsel fees and expenses, resulting from Canadian's failure to defend a tort action against Weg. In the companion case, an action of contract and tort, the defendant (Sisson) is an insurance agency, and the claim is for breach of contract and negligence in failing to forward to Canadian notice of the accident giving rise to the tort claim and in failing to advise Weg to send the notice directly to Canadian. The judge ruled as matter of law that Canadian had been given sufficient notice, and allowed Sisson's motions for directed ver-

[3] Canadian Universal Insurance Company, Ltd., formerly Newfoundland American Insurance Company, Limited.

dicts. The jury returned a verdict against Canadian for $45,312.19. The cases are before us on Canadian's exceptions in the action against it and on Weg's exceptions in the action against Sisson.

By its exceptions, Canadian brings to us five contentions: (1) that the action was premature, (2) that the tort action was excluded from coverage because the bodily injury was not one "arising out of the insured's business . . . pursuit," (3) that the tort action was excluded from coverage because the bodily injury was to an "employee of the insured," (4) that the jury was erroneously instructed on burden of proof as to employee status, and (5) that the judge erred in his rulings on notice to the insurer. The plaintiffs' action against Sisson is alternative to their action against Canadian; the plaintiffs assert that if Canadian's exceptions are sustained their exceptions in the action against Sisson should also be sustained.

1. Canadian asserts that the action against it violates the following provision of the insurance policy: "13. *Action Against Company:* No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

The tort judgment was for the conscious suffering of one MacKay as a result of a bite by a dog licensed to Weg. The dog bite was received May 11, 1962, MacKay died July 31, 1962, the action was begun by writ dated April 15, 1963, and Canadian disclaimed coverage by letter dated June 25, 1963. The plaintiff in the MacKay action had a verdict in April, 1965, and the present action against Canadian was begun by writ dated June 21, 1965. Exceptions of both parties were overruled by this court in the MacKay action on February 1, 1968. *MacKay* v. *Ratner*, 353 Mass. 563. Judgment for the plaintiff for damages in the amount of $26,229.08 and costs in the amount of $433.11 was entered

February 19, 1968. The verdict in the present action was rendered May 12, 1969.

The action against Canadian is brought for breach of the insurer's duty to defend, and the insured can only recover if there has been such a breach. "In nearly all, if not in all, the decisions which have dealt with this question, the holding has been that an insurance company which without right has refused to defend an action against its insured no longer can insist upon the case being carried to judgment against the insured." *Berke Moore Co. Inc.* v. *Lumbermens Mut. Cas. Co.* 345 Mass. 66, 70 (settlement by insured). See *Tighe* v. *Maryland Cas. Co.* 218 Mass. 463, 468 (default judgment against insured); Anno. 49 A. L. R. 2d 694, 751–754. We think that the insured after a refusal to defend can declare upon the policy and can assign as breach either the refusal to defend or the later refusal to pay. See *St. Louis Dressed Beef & Provision Co.* v. *Maryland Cas. Co.* 201 U. S. 173, 181. Compare *Dryden* v. *Ocean Acc. & Guar. Corp. Ltd.* 138 F. 2d 291, 295 (7th Cir.) (impleader of insurer); *Kinnan* v. *Charles B. Hurst Co.* 317 Ill. 251, 257–258; *Matter of Empire State Sur. Co.* 214 N. Y. 553, 563–566.

2. By "Endorsement No. 2" to the policy, it was agreed that "such insurance as is afforded by the policy for bodily injury liability . . . applies only to bodily injury, sickness, disease of [*sic*] death . . . arising out of the insured's business, professional or occupational pursuit." Canadian argues that Weg's business was the purchasing of junk cars, that the tort action arose because certain dogs were licensed to Weg, and that it was therefore error to deny Canadian's motion for a directed verdict. But one of the plaintiffs testified that the dogs were obtained as part of "security measures" with respect to the premises where Weg did business. Weg shared the premises with The O. Hodgkins Corporation (Hodgkins). Hodgkins took care of the dogs, but they were licensed to Weg. The bodily injury was to an employee of Hodgkins and took place on the shared premises. We think the evidence was ample that it arose out of Weg's "business . . . pursuit."

3. Under the heading "Exclusions" the policy provides, "This policy does not apply: . . . (h) under coverage B [Bodily Injury Liability — Except Automobile], . . . to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured."

By "Endorsement No. 3" the "Named Insured" was amended by inserting the underlined words: "The O. Hodgkins Corp. and George A. Ratner, Eugene L. Ratner, William A. Ratner, Trustee of Israel & Dora Ratner Trust, *d/b/a Weg Auto Company.*"

There was testimony that MacKay, the injured person, was an employee of Hodgkins and not of Weg. Canadian claims that its motion for a directed verdict should have been granted because he was an "employee of the insured." It argues that Weg and Hodgkins were only one business organization and that the policy treats them as one organization and one unit; alternatively, it argues that MacKay was excluded from coverage as an employee of a joint venture.

These contentions entirely ignore the following provision of the policy: "8. *Severability of Interests:* The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."

The "severability of interests" clause seems to have been adopted by the insurance companies in 1955 precisely in order to eliminate the confusion of interpretation which had arisen on the question now before us. See *Shelby Mut. Ins. Co.* v. *Schuitema,* 183 So. 2d 571, 573, affd. per cur. 193 So. 2d 435 (Fla.); Anno. 50 A. L. R. 2d 78, 99. Under that clause the exclusion of coverage for injury to an employee of "the insured" deprives no one of coverage except with respect to his own employees. *Marwell Constr. Inc.* v. *Underwriters at Lloyd's, London,* 465 P. 2d 298 (Alaska). *Shelby Mut. Ins. Co.* v. *Schuitema, supra. Walker* v. *Fireman's Fund Ins. Co.* 268 F. Supp. 899 (D. Mont.). Compare *Kelly* v. *State Auto Ins. Assn.* 288 F. 2d 734, 735 (6th Cir.)

("any employee of an Assured"). Otherwise, the "severability of interests" clause would be rendered useless. See Risjord & Austin, "Who Is 'The Insured'" Revisited, 28 Ins. Counsel J. 100.

4. Canadian excepted to the judge's refusal to charge the jury that the burden of proof was on the plaintiffs to establish that the injured person was not an employee of the named insured, and to the instructions he gave that the burden was on Canadian to prove that MacKay was an employee of Weg and that the jury might consider Weg as a separate entity from Hodgkins. The judge's theory was that stated in *Murray* v. *Continental Ins. Co.* 313 Mass. 557, 563, "that a plaintiff seeking to recover for breach of a duty or obligation created by a general clause of a contract, which also contains an exception descriptively limiting such duty or obligation, must allege and prove that his cause of action is within the contract and outside the exception; but that where the exception is in another separate and distinct clause of the . . . contract defining . . . the duty or obligation, then the burden is upon the party relying upon such an exception." We think that that principle was properly applied here, where the applicable "Coverage B" was under the bold type caption "Insuring Agreements," and the exclusion (h) was under a separate bold type caption "Exclusions," notwithstanding the introductory clause, preceding the "Insuring Agreements," that the company "Agrees with the insured . . . subject to the . . . exclusions . . . of this policy." *Id.* at 563–566.

5. On the first page of the policy, near the top, in red type, outlined in red, is the following legend: "In the event of any occurrence likely to result in a claim under this document, immediate notice should be given to the company or its authorized representatives."

Condition 10 of the policy, on its last page, is as follows: "10. *Notice of Accident:* When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to

identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

The judge conducted a preliminary hearing, in the jury's presence, on the question whether the notice sent April 26, 1963, was timely and sufficient under the terms of the policy. MacKay was bitten late on Friday afternoon, May 11, 1962. On the following Monday, May 14, according to the testimony of one of the plaintiffs, he dictated, signed and sent to Sisson a letter. Weg's file copy, received in evidence, purports to be from Weg to Sisson; it identifies the insurance policy now in suit, describes the dog bite, identifies MacKay as an employee of Hodgkins, says that an accident report is lodged by Hodgkins with its workmen's compensation insurer, and continues, "However, since the incident did occur in our yard in common, we are herewith advising you so that our rights may be protected should the occasion arise. This incident is obviously covered under Workmens Compensation by the insurer of the O. Hodgkins Corp."

At the close of the preliminary hearing, the judge ruled that between May 11, 1962, and April 17, 1963, the plaintiffs had no reason to believe that the dog bite was likely to result in a claim under the policy in suit, and that the notice given April 26, 1963, satisfied both the clauses quoted above, citing *Leveille* v. *Aetna Cas. & Sur. Co.* 353 Mass. 716, 719. Canadian excepted to the ruling, and argues that the ruling erroneously took from the jury an issue on which the plaintiffs had the burden of proof. Canadian also argues that the evidence did not warrant a finding that the notice was given "as soon as practicable," that the "likely" clause in red type was not part of the contract of insurance, and hence that its motion for a directed verdict should have been granted.

We are not required to rule on the effect of Condition 10 standing alone. As to that effect, see *Segal* v. *Aetna Cas. & Sur. Co.* 337 Mass. 185, 187–189; *Brackman* v. *American Employers' Ins. Co.* 349 Mass. 767. Compare *Bass* v. *All-*

*state Ins. Co.* 77 N. J. Super. 491. For we think that the "likely" clause in red type was part of the policy. Compare *Pierce* v. *Charter Oak Ins. Co.* 138 Mass. 151, 162; *Sterneck* v. *Equitable Life Ins. Co.* 237 F. 2d 626, 628–629 (8th Cir.); *Hessler* v. *Federal Cas. Co.* 190 Ind. 68, 74–75. Reading the two provisions together, an insured could reasonably conclude, and the insurer has reason to know that he could conclude, that when an accident occurs, which is likely to result in a claim under the policy, written notice should be given as soon as practicable. See *Ferguson* v. *Union Mut. Life Ins. Co.* 187 Mass. 8, 10, 14.

There was evidence sufficient to justify a finding that, on the facts known to the plaintiffs before April, 1963, MacKay's dog bite was not "likely" to result in a claim under the policy. According to the testimony of one of the plaintiffs, MacKay was seventy-four to seventy-six years old, and had been an employee of Hodgkins for more than twenty years. He had had about two heart attacks. He and the witness were quite close; the witness had told him he should be retired, but MacKay had asked not to be retired and the witness had honored the request. After the dog bite on May 11, 1962, when asked if he wanted to go to the hospital, MacKay said he did not think his injury was serious, that he would go home and would see his own doctor. He filed for and received workmen's compensation under Hodgkins' policy. In July, 1962, he said he was coming back to work. Two or three weeks after he died on July 31, 1962, his daughter came to pick up his property and to thank the plaintiffs for sending flowers. Later the plaintiffs heard that his widow had filed a claim for death benefits under the workmen's compensation act. MacKay had not given any notice that he reserved his common law rights. The plaintiffs heard nothing further concerning him or his accident until April, 1963. Even now, despite the decision in *MacKay* v. *Ratner,* 353 Mass. 563, 565–566, that the jury in that case could find that there was no common employment, Canadian argues to us that to allow recovery in the present case "would be shocking,

for the defendant would be called upon to assume coverage under the workmen's compensation law." There was no error in refusing to direct a verdict for Canadian on the ground that insufficient notice had been given.

The judge, however, ruled that the notice was sufficient as matter of law. The plaintiffs seek to uphold that ruling as one based on undisputed facts. But the plaintiffs had the burden of proving that they gave sufficient notice, and Canadian was not bound by the evidence summarized above or by the inferences which might be drawn from it. The plaintiffs knew of the dog bite the day it happened. On their own testimony, they thought a claim under the policy in suit sufficiently "likely" to send notice promptly to their insurance agent. Although the letter to Sisson shows on its face that it was sent out of an excess of caution, Canadian is not bound by statements in that letter. There was a question of fact as to whether a claim was "likely," and Canadian's exception to the judge's ruling must be sustained. In view of this conclusion, it is unnecessary for us to pass on Canadian's additional exceptions to rulings on certain evidence on the issue of notice. Nor need we pass on the plaintiffs' claim that Canadian held Sisson out as its agent to receive the letter of May 14, 1962.

6. The plaintiffs' action against Sisson is alternative to their action against Canadian. If proper notice of the accident was not given to Canadian, Canadian has a complete defence. *Depot Cafe Inc.* v. *Century Indem. Co.* 321 Mass. 220, 225. *Brackman* v. *American Employers' Ins. Co.* 349 Mass. 767. On the other hand, if as the trial judge ruled proper notice was given, any failure of Sisson to forward the notice or give advice with respect to it caused no harm to the plaintiffs. On this ground he granted Sisson's motions for directed verdicts. The plaintiffs duly excepted to the ruling on notice as it applied to the action against Sisson, and to the allowance of Sisson's motions for directed verdicts.

After the preliminary hearing and the ruling that there was sufficient notice to Canadian, the judge ruled that

"there should be no further evidence concerning notice in this case." The plaintiffs duly excepted to this ruling in the case against Sisson and stated for the record that if it were not for this ruling they would have offered further evidence on notice.

There was evidence that the plaintiffs had done business with Sisson as an insurance agent or broker for seven or eight years, and that Sisson placed all their insurance except workmen's compensation. When they wanted insurance advice they consulted Sisson, and when they received notice of a claim they sent it to Sisson. One of the plaintiffs testified that on May 14, 1962, he sent to Sisson the letter described earlier. The treasurer and general manager of Sisson testified that he never got the letter and that Sisson had no record of receiving it. Sisson now argues that there was not sufficient evidence of mailing; nor of any duty or obligation of Sisson with respect to the letter if received.

It would have been better practice for the plaintiffs to make an offer of proof with respect to their action against Sisson. But an offer of proof has not always been required where the trial judge has prevented all testimony on a particular issue. *Ford* v. *Worcester*, 339 Mass. 657, 659. The plaintiffs' position was a difficult one, created by the judge's erroneous ruling that the notice to Canadian was sufficient as a matter of law. The plaintiffs excepted to that ruling, and that exception must be sustained.

*Exceptions sustained.*